IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY PERSON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL, | : | No. 20-4254 |
|     Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                            **August 4, 2020**
**U.S. Magistrate Judge**

       Plaintiff Barry Person alleges the Administrative Law Judge ("ALJ") erred in denying his application for Disability Insurance Benefits ("DIB") by failing to give controlling weight to the opinion of his treating cardiologist. Pl. Br. (doc. 10) at 2. For the reasons explained below, I deny Person's claim.[1]

       Person received DIB for several years after he suffered a heart attack in 2013, but had sufficiently recovered functionality to work again as of August 5, 2015. R. at 56-57. Person returned to work from 2015 through 2018, Reply (doc. 12) at 4 (citing R. at 132), and retired in July 2018. R. at 30.

       In September 2018, Person reported to his primary care physician that he had been walking two miles per day since retiring. Id. at 222. On November 3, 2018, Person's cardiologist described his condition as "stable," and Person reported he had no chest pain or shortness of breath and was walking three miles per day five days per week. Id. at 333. On

---

[1]    Person consented to my jurisdiction on August 31, 2020 (doc. 3), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

November 28, 2018, Person filed for DIB again, alleging he had been fully disabled since July 20, 2018.  Id. at 126.

In late December 2018, Person was admitted to the hospital from the emergency room because he was suffering from heart failure.  Id. at 402, 1110-12.  His ejection fraction ("EF"), i.e. the percentage of blood that could travel through the blood vessels around his heart, had previously been measured at around 40%.  Id. at 371, 373.  During his 5-night hospital stay in December 2018, Person's EF was measured at 15-20%.  Id. at 1155.  Following a cardiac catheterization and medication change, id. a 1110, Person's condition was considered "stable" by mid-January 2019, id. at 330.  By April 2019, his EF had increased to 25%.  Id. at 1279.

In August 2019, Person's cardiologist opined that he could lift and carry at the light exertional level and sit/walk at the sedentary exertional level with a sit-stand option, breaks every two hours, and two absences per month, but that Person's concentration would occasionally be so compromised he would be unable to attend to even simple tasks.  Id. at 1306-07.

The ALJ accorded "partial weight" to the cardiologist's opinion, explaining that the light limitation was supported by the record and the sedentary limitation more restrictive than Person's maximum physical capacity, but that he would adopt the sedentary limitation to account for Person's complaints of fatigue.  Id. at 18.  The ALJ noted that the record did not support the physician's opinion that Person would be absent from work twice per month, and that the cardiologist had provided no explanation for his assertion that Person would require breaks every two hours.  Id. at 19.  The ALJ found the cardiologist's opinion regarding Person's ability to focus inconsistent with: (1) Person's activities of daily living, which included driving, taking public transportation, shopping, going to the movies, going to sporting events, managing money,

and watching television; and (2) Person's testimony that cardiac rehabilitation had improved his condition after December 2018.  Id.

I must uphold the ALJ's opinion if it is supported by "substantial evidence" and includes sufficient explanation for discounting any contradictory evidence.  42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) ("The ALJ Must Evaluate All the Evidence and Explain the Basis for his Conclusions").  Substantial evidence is only "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  This sets the bar for evidentiary support of an ALJ opinion "not high" and requires me to affirm any decision supported by "more than a mere scintilla of evidence." Id.  I may not re-weigh the evidence to reach my own conclusions, and must affirm decisions that meet these standards even if I would have decided them differently in the first instance. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

ALJs are required to address all medical opinions.  20 C.F.R. § 1520c(b).  They must weigh the opinions' conclusions based on several regulatory factors, primarily the extent to which the conclusions are supported by and consistent with the evidentiary record.  Id.  Person argues the ALJ should have analyzed his cardiologist's opinion pursuant to the "treating physician rule," which required ALJs to assign controlling weight to the opinions of treating physicians if they met certain regulatory factors.  Pl. Br. at 7; see also 20 C.F.R. § 404.1527. However, the "treating physician rule" applies only to those claims filed before March 27, 2017. 82 F.R. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c(a) (noting that, for claims filed after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[] including those from [the claimant's own] medical sources.").  Because Person filed his claim in November

2018, the ALJ was required to analyze the medical opinion evidence under the new standard that focuses on the opinion's support in and consistency with the record.  Id.

Person argues his cardiologist's opinion was sufficiently supported because it noted the following "objective findings, clinical observations, and symptomology": (1) Person's "echocardiogram with [ejection fraction rate of] 25%"; (2) his "angiogram [showing] coronary artery disease"; and (3) his "prior open heart surgery for aortic valve."  Pl. Br. at 5 (citing R. at 1307).

The ALJ adopted most of the recommended limitations, excluding only those regarding absences and concentration.  R. at 18-19.  The ALJ reasonably determined that Person's ejection fraction ("EF") rate, angiogram, and history of heart surgery did not specifically support those limitations.  Johnson v. Comm'r of Soc. Sec., 497 F. App'x 199, 201 (3d Cir. 2012) ("this court cannot re-weigh the evidence or substitute its judgment for that of the ALJ").

Person further argues the ALJ improperly found the opinion inconsistent with the weight of the evidence because it was consistent with: (1) his pre-existing coronary artery disease; (2) the prior finding of disability based on EF rates of 35-50%; and (3) the suggestion in Listing 4.02 that EF rates lower than 30% during a period of stability are signs of seriously limiting cardiac disease.  Pl. Br. at 5-6 (citing R. at 53, 56).  Person argues the ALJ should have given the opinion that he was disabled controlling weight based on the lower EF rates because his EF rates had recovered to only 25% as of April 2019 and therefore distinguished his post-December 2018 condition from his August 2015 condition.  Id.

Person's myopic focus on the ejection fraction rate is misplaced.  Although a significant marker of the existence of a serious cardiac condition, it was not the determinative factor in his prior determination.  See R. at 53 (noting that Person's condition was described as "stable" as of

March 2015), 54 (noting Person's "limited" activities during the period of disability), 56 (noting Person's extensive exercise routine as of August 2015), and 57 (noting that Person was able to work as of August 2015 despite experiencing periodic palpitations). Moreover, the argument regarding Listing 4.02 cuts both ways: although it admittedly should be understood to mark EFs lower than 30% as potentially diagnostic of chronic heart failure, its inclusion of other required symptoms to establish listing-level severity also suggests that even chronic heart failure can be merely limiting and not disabling if its functional effects do not sufficiently restrict activities of daily living. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (explaining that meeting Listing 4.02 requires meeting the objective criteria for chronic heart failure along with the specified severity measurements).

Person argues that the ALJ failed to account for the extent to which his obesity would exacerbate his fatigue, eroding his concentration and focus and making it impossible for him to work in a skilled position. Pl. Br. at 7. He notes that he consistently complained of fatigue and that his ability to undertake sporadic activities should not be understood as evidence of his ability to work full-time. Id. The ALJ, however, took into account Person's fatigue by limiting him to a more restrictive exertion level than he otherwise would have. R. at 18 ("limiting him to no more than two hours would account for issues of fatigue due to his heart condition").

Person further argues that his heart condition makes it impossible for him to tolerate working under the increased stress caused by a full-time skilled position. Pl. Br. at 8-9. The ALJ noted, however, that Person testified his shortness of breath and fatigue have improved since his December 2018 heart attack. R. at 19. Moreover, Person's history suggests that he has been able to work with mild symptoms such as heart palpitations. Id. at 57. Those palpitations specifically would have been addressed by his December 2018 ablative procedure. Id. at 331

(describing difficult "ablation" that eliminated "spontaneous runs" of increased heartrate).

Finally, Person argues that his reported symptoms should have been fully credited because of his substantial work history. Pl. Br. at 9. The Commissioner contends this would be inappropriate due to guidance prohibiting the assessment of claimants' character as part of a credibility determination. Def. Br. (doc. 11) at 10.

I disagree that according additional credence based on a substantial work history is necessarily a reflection of character; it could also simply reflect a judgment that extensive work experience informs a claimant's own assessment of the functional abilities necessary for full-time work. See 20 C.F.R. § 404.1529(c)(3) (requiring ALJs to consider a claimant's "prior work record" when evaluating symptoms' intensity and persistence). Even if Person's allegations are given additional weight because of his strong work history, however, they cannot overcome the evidence, which shows that he was alleging an inability to work based on his medical condition even while walking three miles per day five days per week. R. at 442 (noting that Person stopped being able to walk three miles per day on December 20, 2018, almost a month after he filed for benefits).

At Person's ALJ hearing, his attorney explained his "theory of the case" was that Person's fatigue so limited his concentration as to make it impossible for him to perform stressful, skilled work full-time. Id. at 34-35. The ALJ provided substantial evidence to support his opinion that limiting Person to sedentary work that allowed for breaks reasonably accommodated any concentration limitations caused by his fatigue. Id. at 18. As of his alleged onset date in July 2018, there was no evidence Person's condition had appreciably worsened from August 2015, when his prior period of disability ended. Compare id. at 56 (describing Person's ability to work despite intermittent palpitations as of August 2015) with id. at 442

6

(describing Person's ability to walk three miles per day as of December 20, 2018). Person's December 2018 heart attack had a serious short-term effect on his condition, and there is evidence that he had not fully recovered as of April 2019. Nonetheless, there is also no evidence showing a direct correlation between his EF and his ability to concentrate, and even Person's EF had recovered to some extent by April 2019. Id. at 1279. The ALJ provided substantial evidence to support discounting the treating cardiologist's proposed concentration limitation. See Salem v. Colvin, No. 15-1453, 2017 WL 363011, at *3 (W.D. Pa. Jan. 24, 2017) (upholding ALJ determination discounting treating physician opinion that claimant's fatigue-induced concentration limitation was disabling based on reported activities of daily living).

       An appropriate Order accompanies this opinion.